IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LAWANDA S. HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   1:14-cv-148 |
| | ) |
| DOLLAR GENERAL, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

*Pro se* Plaintiff Lawanda S. Hughes ("Ms. Hughes") brings this action against Dollar General,[1] alleging racial discrimination based on failure to promote and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (2012), 42 U.S.C. § 1981, and the Rehabilitation Act of 1973, 29 U.S.C. § 701. Compl. 8, Doc. 2. Before the Court is Dollar General's unopposed Motion for Summary Judgment.[2] Def.'s Mot. Summ. J., Doc. 17. Oral argument on Defendant's motion was heard on March 19, 2015. For the reasons below, the Court will grant summary judgment for Dollar General.

---

[1] "Dollar General" is a misnomer for the actual Defendant, Dolgencorp, LLC, Answer 1 & n.1, which is a subsidiary of Dollar General Corporation, Hr'g Tr. 3:20–22. Because Dolgencorp refers to itself throughout its brief as "Dollar General," the Court will do the same in this opinion. See United States v. A. H. Fischer Lumber Co., 162 F.2d 872, 874 (4th Cir. 1947) (noting that a correct Defendant who has "unquestionably been brought into the case" under an incorrect name will be bound by the court's judgment).

[2] In a letter to Ms. Hughes, the Clerk of Court explained her right to respond to the motion and informed her that failing to respond would likely result in summary judgment for the Defendant. Roseboro Letter 1, Doc. 19; see Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Ms. Hughes did not respond.

## I. BACKGROUND

In summarizing the relevant facts, the Court considers only facts derived from evidence in the record and facts that are deemed admissions in Dollar General's pleadings.[3] The Court does not consider alleged facts set forth in Ms. Hughes' unverified complaint that are unsupported by citations to the record. Viewing the evidence in the light most favorable to Ms. Hughes, the material facts that the Court considered are as follows:

Ms. Hughes is an African-American woman who worked for over two years at Dollar General, Compl. ¶ A, a discount retailer of general merchandise, Def.'s Mem. Ex. 1, Hughes Dep. 22:25–23:2, Doc. 18-1. Several months into her employment, she received a promotion from Sales Associate to Lead Sales Associate. Hughes Dep. 24:10–15, 26:6–8. She continued to pursue promotion opportunities and applied the following year to become Store Manager at a different Dollar General location. Def.'s Mem. Ex. 2, Sorenson Aff. ¶ 9, Doc. 18-2. While the district manager, Stephen Sorenson, felt she was unprepared for the Store Manager position, id. ¶¶ 10–11; Hughes Dep. 69:14–20, he offered her an Assistant Store Manager position instead, Def.'s Mem. Ex. 11, EEOC Charge 1, Doc. 18-11.

Ten days later, Ms. Hughes lost the promotion. Id. at 1. In those ten days, assistant store manager Kyle Wray had asked the store manager to discipline Ms. Hughes. Id.; Def.'s

---

[3] Federal Rule of Civil Procedure 56(c) lists the items a court may consider when reviewing a motion for summary judgment. This list does not include pleadings, such as a complaint, but does include "admissions," Fed. R. Civ. P. 56(c)(1)(A), such as facts in the complaint that the Defendant admits in its pleadings. See Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990) (holding that an admission in the pleadings is a binding judicial admission). While a plaintiff cannot rely solely on an unverified complaint to oppose a motion for summary judgment, Higgins v. Scherr, 837 F.2d 155, 156–57 (4th Cir. 1988), a plaintiff may rely on a *verified* complaint, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Ms. Hughes filed an unverified complaint.

Mem. Ex. 5, Hughes Notes 2, Doc. 18-5.  Ms. Hughes responded by filing a complaint against Mr. Wray with Dollar General's Employee Resource Center.  Id.  Out of humiliation, she also resigned her position as Lead Sales Associate, though she retracted her resignation two days later.  Def.'s Mem. Ex. 6, First Resignation Email 1, Doc. 18-6; Def.'s Mem. Ex. 9, Apology Email 5, Doc. 18-9.  Mr. Sorenson, the district manager, then informed Ms. Hughes that because of her resignation email, he would no longer promote her to Assistant Store Manager.  Hughes Dep. 52:9–12.  She then filed a complaint against Mr. Sorenson with Dollar General's Employee Resource Center.  EEOC Charge 2; Hughes Notes 3.

In addition to her unsuccessful efforts to become Store Manager or Assistant Store Manager, Ms. Hughes describes several incidents that made her unhappy at Dollar General. These incidents center on the actions and behaviors of Ms. Hughes' three managers:  the assistant store manager, Mr. Wray; the store manager, Ms. Artina Tatum; and the district manager, Mr. Sorenson.  First, Mr. Wray slammed drawers, forcefully pushed on doors, recommended discipline for Ms. Hughes, referred to her as the employee who could not be on time to work, and made critical comments of her in front of customers and employees. Hughes Notes 2–3; Hughes Dep. 88:13–89:19.  Second, Ms. Tatum threatened to write up or fire Ms. Hughes if she did not come to work on certain days that Ms. Hughes had requested off.  EEOC Charge 2.  The following month, Ms. Tatum stated her intent to fire all but two employees, Hughes Dep. 90:6–8, both of whom Ms. Hughes alleges in her

Complaint are white.[4]  Finally, Mr. Sorenson referred to Ms. Hughes as "her" while she stood in his presence.  Hughes Notes 2.  He also repositioned the office cameras, making Ms. Hughes feel as though every move she made was on display for him to see.  Hughes Dep. 98:17–99:2; EEOC Charge 2.

Ms. Hughes filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and exhausted her administrative remedies shortly after failing to become Assistant Store Manager.  EEOC Charge; EEOC Dismissal & Notice of Rights, Doc. 2-1.  Several months later, Ms. Hughes voluntarily resigned her position with Dollar General.  Def.'s Mem. Ex. 15, Second Resignation Email 1, Doc. 18-15.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of demonstrating a lack of genuine dispute of material fact rests on the party seeking summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party.  Id. at 248.  When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case."  Celotex Corp. v. Catrett, 477 U.S.

---

[4] In her deposition, Ms. Hughes recalled that Ms. Tatum stated she would "fire everybody and keep Margaret and Ashley."  Hughes Dep. 90:7–8.  Although the deposition does not state the race of Margaret or Ashley, the Complaint alleges that they are white.  Compl. ¶ KK.  Dollar General denies this paragraph of the Complaint.  Answer ¶ KK.

4

317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

To defeat a motion for summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 250. It must support its assertions by citing to particular parts of the record, as an opposition to summary judgment cannot rest on pleadings alone. Fed. R. Civ. P. 56(c)(1); Celotex, 477 U.S. at 324. It must also establish more than the "mere existence of a scintilla of evidence" in support of its position. Anderson, 477 U.S. at 252. If the nonmoving party fails to respond to the motion, the court may view the facts in the record as undisputed, but the court may grant the motion only if the moving party is entitled to summary judgment. Fed. R. Civ. P. 56(e)(2)–(3).

When reviewing a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court must also construe a plaintiff's *pro se* pleadings liberally, holding them to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see Butler v. Cooper, 554 F.2d 645, 647 (4th Cir. 1977). This liberal standard, however, does not require the court to "discern the unexpressed intent of the plaintiff," Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006), or to "conjure up questions never squarely presented," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers.").

## III. ANALYSIS

Ms. Hughes asserts two claims: (1) racial discrimination based on failure to promote, in violation of Title VII and 42 U.S.C. § 1981 and (2) a hostile work environment, in violation of "Title VII Rehab Act."[5,6,7] Compl. 8.

### A. Ms. Hughes fails to establish a prima facie case of failure to promote based on race.

A plaintiff may prove racial discrimination using direct or indirect evidence. Because Ms. Hughes presents no direct evidence of discrimination, the Court will assess circumstantial evidence under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (noting that the same framework applies to both Title VII and § 1981 cases). Under this framework, Ms. Hughes bears the initial burden of establishing a prima facie case, see McDonnell Douglas, 411 U.S. at 802, which creates a presumption of discrimination,

---

[5] The Rehabilitation Act prohibits discrimination based on disability. 29 U.S.C. § 701 (2012). Because Ms. Hughes does not state a disability or provide evidence allowing the Court to infer one, the Court does not address her claim under the Rehabilitation Act.

[6] From Ms. Hughes' deposition, Dollar General infers an additional claim for constructive discharge. Def.'s Mem. Supp. Summ. J. 16, Doc. 18. The Court does not address this issue because Ms. Hughes has not shown that "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." See Pa. State Police v. Suders, 542 U.S. 129, 147 (2004). To the contrary, she resigned to prevent herself from "saying or doing hurtful things to her fellow employees." Compl. ¶ TT.

[7] Ms. Hughes also complains that Dollar General repeatedly denied her request to transfer to a different store because of her race. Hughes Dep. 91:8–10. To the extent Ms. Hughes asserts a discrimination claim based on Dollar General's failure to transfer her, she fails. Ms. Hughes does not state a prima facie case of discrimination because she has not shown an adverse employment action or raised an inference of discriminatory intent. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277 (4th Cir. 2004) (en banc). In fact, when Mr. Sorenson revoked her promotion to Assistant Store Manager, he offered her a lateral transfer to a different store. Hughes Dep. 91:11–13, 92:6–9. Ms. Hughes declined this transfer because she did not want to incur additional gas costs. Hughes Dep. at 92:9–16.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If she succeeds, the burden shifts to Dollar General "to articulate some legitimate, nondiscriminatory reason" for its actions. See McDonnell Douglas, 411 U.S. at 802. The burden then shifts back to Ms. Hughes to demonstrate that Dollar General's reason was a pretext for discrimination, see id. at 804—meaning a cover-up for "what was in truth a discriminatory purpose," Smith v. Univ. of N.C. at Chapel Hill, 632 F.2d 316, 337 (4th Cir. 1980) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1012 (1st Cir. 1979)). At all times, Ms. Hughes bears the ultimate burden of persuading the Court that Dollar General intentionally discriminated against her. See Burdine, 450 U.S. at 253.

To establish a prima facie case of discrimination for failure to promote, a plaintiff must prove that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the Defendant[] rejected her application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). To satisfy the fourth element, a plaintiff may demonstrate that, following her application, the position remained open or was filled by "a similarly qualified applicant outside the protected class." Baqir v. Principi, 434 F.3d 733, 742 (4th Cir. 2006). If the plaintiff establishes a prima facie case, her employer may then offer a legitimate, nondiscriminatory reason for failing to promote her by demonstrating that the successful applicant was better qualified. Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995). The plaintiff then has an opportunity to prove pretext. Id. at 1129–30.

Ms. Hughes has not established a prima facie case that Dollar General failed to promote her to Store Manager or Assistant Store Manager based on her race. When she applied to become Store Manager at a store struggling with theft and damaged goods, she did not have experience managing a store or working in a troubled store. Sorenson Aff. ¶¶ 9–10. Mr. Sorenson was unaware if she had any previous management experience, id. ¶ 10, and Ms. Hughes presented no evidence of her qualifications to the Court. In fact, when asked in her deposition if she was qualified for the position, she testified, "I wasn't necessarily saying I was qualified." Hughes Dep. 68:2–4. The successful applicant was ultimately an African-American male with management and law enforcement experience. Sorenson Aff. ¶ 11; Hughes Dep. 69:8–13. For these reasons, Ms. Hughes fails to prove two elements of the prima facie case: that she was qualified for the position and that the successful applicant was someone outside her class.

Ms. Hughes also fails to establish a prima facie case regarding the Assistant Store Manager promotion that Mr. Sorenson took away following her retracted resignation email.[8] To begin, Ms. Hughes did not apply for the promotion; Mr. Sorenson offered her the position when she expressed interest in a different position for Store Manager. EEOC Charge 1. Ms. Hughes also does not allege that Dollar General revoked her promotion under discriminatory circumstances. She acknowledges Mr. Sorenson's reason for revoking

---

[8] Ms. Hughes does not assert a claim of retaliation, but even if the Court were to infer one based on Dollar General's argument in its brief, the claim would fail. Title VII prohibits employers from retaliating against employees for engaging in certain protected activities. 42 U.S.C. § 2000e-3(a) (2012). Sending a resignation email that makes no mention of race or discrimination is not a protected activity. See id. Consequently, Ms. Hughes has no retaliation claim for losing her promotion as a result of her resignation email.

8

her promotion—that she had resigned from Dollar General shortly after accepting the promotion, Hughes Dep. 92:6–8—but does not allege any additional motivation based on race. Further, the record is silent on whether the Assistant Store Manager position remained open or was filled by a similarly qualified individual outside the class. Mr. Sorenson insists, in fact, that no Assistant Store Manager positions were open at the time. Sorenson Aff. ¶ 13. While the Court views the evidence in the light most favorable to Ms. Hughes, it cannot construct a claim where none exists. Ms. Hughes has failed to establish that she applied to an open position and that Dollar General denied her application under circumstances suggesting unlawful discrimination.

Because Ms. Hughes has failed to establish a prima facie case of failure to promote based on either management position, she has not carried her initial burden under the McDonnell Douglas burden-shifting framework. Finding no need to engage in a hypothetical burden-shifting analysis, the Court does not address whether Dollar General has presented any legitimate, nondiscriminatory reasons for its actions or whether Ms. Hughes has any potential arguments that these reasons are a pretext for discrimination.

**B. Ms. Hughes fails to establish a prima facie case of a racially hostile work environment.**

Title VII prohibits racial discrimination regarding the terms and conditions of employment; because an employee's work environment is a term or condition of employment, Title VII creates a cause of action for a hostile work environment. EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001) (citing Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 73 (1986)). To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that the offending behavior was (1) unwelcome,

9

(2) based on her race, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 174–75 (4th Cir. 2009).

The "severe or pervasive" element involves both subjective and objective components: not only must the plaintiff herself perceive the environment to be hostile or abusive, but that perception must also be reasonable. EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). To determine objective reasonableness, the court must consider "all the circumstances," including how frequently the discriminatory conduct occurred, how severe the conduct was, whether the conduct was physically threatening or humiliating, and whether the conduct unreasonably interfered with the plaintiff's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). In the Fourth Circuit, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, 521 F.3d at 315. Complaints "premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable under Title VII." Id. at 315–16 (alterations in original) (citations omitted) (internal quotation marks omitted).

While Ms. Hughes describes several actions and statements by her managers, she has not established this conduct was based on race or was objectively severe or pervasive. She disliked when Mr. Wray, the assistant store manager, slammed drawers and forcefully pushed on doors. Hughes Notes 3; Hughes Dep. 88:13–22. Although she found this behavior "distracting" and "startling," she acknowledges that they were unrelated to race. Id. at 89:2–9. Ms. Hughes also complains that Ms. Tatum threatened to discipline or fire her if she did

10

not come to work on days she had requested off, EEOC Charge 2, but she does not allege or demonstrate that this threat was motivated by race. Ms. Tatum, an African-American woman, Hughes Dep. 26:1–2, explains that she denied Ms. Hughes' request for time off because the requested days coincided with Ms. Tatum's return from vacation, a time when the store would need all hands on deck. Def.'s Mem. Ex. 14, Tatum Aff. ¶ 2, Doc. 18-14. Finally, Ms. Hughes complains that Mr. Sorenson, the district manager, repositioned the office cameras to capture a broader perspective. Hughes Dep. 98:17–99:2; EEOC Charge 2. Again, Ms. Hughes does not allege or demonstrate that this change was racially motivated. In fact, she admits that "in essence it was a good thing because you could see more of what went on." Hughes Dep. 99:21–22. Her complaint is rooted not in a perception of racial discrimination but in the dissatisfaction that Mr. Sorenson did not notify employees before repositioning the cameras. Id. at 99:23–100:2.

Just as Ms. Hughes has not demonstrated racial motivation in her managers' actions, she does not demonstrate racial motivation in their comments. In fact, Ms. Hughes testified that she never heard any manager mention race. Id. at 90:25–91:3. On one occasion, she interpreted a comment by Ms. Tatum as racially related when Ms. Tatum stated her intent to fire all but two employees. Id. at 90:6–14. Because those two employees were white, Ms. Hughes interpreted the comment as a racial statement, although Ms. Tatum did not specifically mention race. Id. at 90:9–14, 17–18. This comment's relation to race is

tangential at best and does not alone rise to the level of severe or pervasive hostility.[9] Ms. Hughes also testified that she never heard Mr. Wray or Mr. Sorenson make a racial comment. Id. at 90:19–24. While she felt Mr. Wray's comments could be "humiliating and belittling," she was unsure whether they were racially related, id. at 89:20–25, and she has provided no examples or descriptions of the substance of the comments for the Court to evaluate. Finally, Ms. Hughes complains that Mr. Sorenson referred to her as "her," rather than by her name, while she stood in his presence. Hughes Notes 2. Again, she does not allege or demonstrate that this comment was racially motivated. At best, Ms. Hughes has described a series of rude or callous behaviors that may be rooted in personal disagreement and personality conflict, but not racial discrimination. See Sunbelt Rentals, 521 F.3d at 315–16.

Even if, arguably, these behaviors were racially based, they fail to rise to the level of severe or pervasive. While Ms. Hughes may have subjectively perceived her work environment to be severely and pervasively hostile, the Court cannot agree that this perception is objectively reasonable. Over two years of employment, Ms. Hughes complains of a handful of incidents, none of which are severe or physically threatening. Although Ms. Hughes felt humiliated by Mr. Wray's comments, she does not state the content or demonstrate the frequency or severity of these comments. Ms. Hughes also does not assert

---

[9] Dollar General argues that Ms. Tatum's comment cannot constitute racially based harassment because Ms. Tatum herself is African American. Hr'g Tr. 4:14–5:3. Because the Supreme Court has "rejected any conclusive presumption that an employer will not discriminate against members of [her] own race," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998), the Court rejects Dollar General's argument that Ms. Tatum cannot harass Ms. Hughes based on her race.

12

that any behaviors she complains of interfered with her ability to perform her work. Because Ms. Hughes has not demonstrated that the offending conduct was racially based or severe or pervasive, she has not established a prima facie case of a racially hostile work environment.

**IV. CONCLUSION**

Ms. Hughes has failed to raise a genuine dispute of material fact as to any issue in this case. Dollar General has demonstrated that it is entitled to judgment as a matter of law on both claims.

**ORDER**

IT IS THEREFORE ORDERED that Defendant Dollar General's Motion for Summary Judgment (Doc. 17) is GRANTED and that this action shall be dismissed with prejudice.

A Judgment granting Dollar General's Motion and dismissing this action will be entered contemporaneously with this Order.

This, the 23rd day of March, 2015.

                                                      /s/ Loretta C. Biggs
                                                  United States District Judge